**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| TYREKA SMITH, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 21-cv-03241-LKG |
| ) | |
| v. ) | Dated:  October 31, 2022 |
| ) | |
| DAVID'S LOFT CLINICAL ) | |
| PROGRAMS, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

### I.      INTRODUCTION

Plaintiffs, Tyreka Smith, Dytania Cannady, Sheron Thomas and Dinel Prentice, allege in this civil action that Defendants, David's Loft Clinical Programs, Inc. ("David's Loft") and David H. Thompson, Jr.:  (1) misclassified them as exempt employees under the Fair Labor Standards Act (the "FLSA"); (2) required that they work more than 40 hours per week; (3) failed to pay them overtime wages at the mandated time-and-a-half rate for each hour worked in excess of 40 hours per week; and (4) failed to pay them for certain hours worked, in violation of the FLSA, 29 U.S.C. § 201, *et seq*., the Maryland Wage and Hour Law, Md. Code Ann. Lab. & Empl. § 3-401, *et seq.* (the "MWHL"), and the Maryland Wage Payment and Collection Law, Md. Code Ann. Lab. & Empl. § 3-501, *et seq.* (the "MWPCL").  *See* Compl. at ¶¶ 1-6, 12-31, ECF No. 1.  On August 5, 2022, the parties filed a joint motion for the approval of a settlement (the "Settlement Agreement") that would resolve these claims.  *See generally* Jt. Mot., ECF No. 25; Jt. Mem., ECF No. 25-1; *see also* 29 U.S.C. § 216(b) (requiring Court approval to release FLSA claims brought by an employee in a private right of action).

The Court held a hearing on the parties' proposed Settlement Agreement on October 24, 2022. *See* ECF No. 26.  For the reasons stated during the hearing, and set forth below, the Court: (1) **APPROVES** the Settlement Agreement; (2) **GRANTS** the parties' joint motion for approval of settlement; and (3) **DISMISSES** this case **WITH PREJUDICE**.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     Factual Background

In this FLSA action, Plaintiffs allege that David's Loft and David H. Thompson, Jr., violated the FLSA, MWHL and MWPCL by:  (1) misclassifying them as exempt employees under the FLSA; (2) requiring that they work more than 40 hours per week; (3) failing to pay them overtime wages at the mandated rate; and (4) failing to pay them for hours worked during certain pay periods.  Compl. at ¶¶ 1-6.  Specifically, Plaintiffs allege that they were regularly required to work more than 40 hours per week and that Defendants knew that Plaintiffs regularly worked overtime, but failed to compensate Plaintiffs at one-and-one-half times their regular pay. *See id.* at ¶¶ 45-49.

In addition, Plaintiffs contend that Defendants failed to pay them for work performed during the first pay period after the start of employment and during the period when Defendants switched payroll from weekly to bi-weekly in 2019. *See id.* at ¶ 50.  As relief, Plaintiffs seek to recover, among other things, unpaid wages, liquidated damages, treble damages and attorneys' fees and costs. *Id.* at Prayer for Relief.

As background, David's Loft is a Maryland for-profit entity that provides psychiatric rehabilitation program services to adults and youth who have been adjudicated in either the child welfare/foster care court, or the juvenile services court. *Id*. at ¶ 12.  Defendant David H. Thompson, Jr., is the owner, director and shareholder of David's Loft. *Id.* at ¶ 14.

Plaintiffs were previously employed as Rehabilitation Specialists/House Managers for David's Loft. *Id*. at ¶ 42.  In this regard, Plaintiff Tyreka Smith was employed by Defendants from approximately July 2018 to June 2019; Plaintiff Dytania Cannady was employed by Defendants from approximately February 2019 to May 2019; Plaintiff Sheron Thomas was employed by Defendants from approximately December 2018 to May 2019; and Plaintiff Dinel Prentice was employed by Defendants from approximately March 2019 to May 2019. *Id.* at ¶¶

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the complaint ("Compl."); the parties' joint motion for approval of settlement ("Jt. Mot."); and the memorandum in support thereof ("Jt. Mem.").

24-31.

      After Plaintiffs commenced this action on December 21, 2021, the parties requested that the Court stay this litigation, so that the parties could engage in mediation, on March 24, 2022. *See* ECF No. 15.  Following several rounds of settlement negotiations, the parties reached a tentative agreement to resolve all claims in this action.  *See generally* Jt. Mem.  And so, on August 5, 2022, the parties filed a joint motion for Court approval of the Settlement Agreement. *See generally* Jt. Mot.

      Relevant to the pending joint motion, the Settlement Agreement provides that Defendant David's Loft shall pay a total sum of $47,000 to Plaintiffs to resolve all claims in this case, upon the Court's approval of the Settlement Agreement.  *See* Jt. Mot. Ex. 1 (the "Settlement Agreement") at ¶ 2.  The Settlement Agreement further provides that this payment is to be apportioned among Plaintiffs as follows:

> (1) $16,250 to Tyreka Smith, to be comprised of a payment of $8,125 for unpaid wages and a payment of $8,125 for liquidated damages or penalties that may have been awarded;

> (2) $5,050 to Dytania Cannady, to be comprised of a payment of $2,525 for unpaid wages and a payment of $2,525 for liquidated damages or penalties that may have been awarded;

> (3) $7,500 to Sheron Thomas, to be comprised of a payment of $3,750 for unpaid wages and a payment of $3,750 for liquidated damages or penalties that may have been awarded; and

> (4) $3,700 to Dinel Prentice, to be comprised of a payment of $1,850 for unpaid wages and a payment of $1,850 for liquidated damages or penalties that may have been awarded.

*Id*. at ¶ 2.A.

      In addition, the Settlement Agreement contains a release of claims provision that provides that Plaintiffs release Defendants "from all claims brought by Plaintiffs in their [c]omplaint." *Id.* at ¶ 4.  Lastly, the Settlement Agreement provides for the payment of

attorneys' fees and costs in the amount of $14,500 to Plaintiffs' attorneys, Edmund C. Celiesius, Jason T. Brown, Nicholas Conlon and James Edward Rubin.  *See id.* at ¶ 2.B; Jt. Mot. Ex. 2 at ¶¶ 7-8 ("Celiesius Decl.").

Mr. Celiesius has submitted a Declaration stating that the Settlement Agreement was reached after substantial arms-length negotiations and that, after Plaintiffs acknowledged that Defendants had a reasonable defense to enhanced damages in this case, the parties turned to the number of overtime hours worked with an agreement to negotiate attorneys' fees separately. Celiesius Decl. at ¶¶ 3-4.  Mr. Celiesius also states that Plaintiffs initially claimed that Defendants owed them $31,340 and that, after several rounds of settlement negotiations, the parties agreed to settle the case for $32,000.  *Id.* at ¶ 4.

In addition, Mr. Celiesius states that he and other counsel for Plaintiffs have collectively expended more than 65.3 hours on this matter since August 2021.  *Id.* at ¶ 5.  This work includes: pre-suit settlement negotiations; conferring with Plaintiffs; settlement negotiations; and preparation of the joint motion seeking Court approval of the Settlement Agreement.  *Id*.  And so, the parties request that the Court approve the Settlement Agreement.  *See* Jt. Mem. at 9.

### B.      Procedural Background

Plaintiffs filed the complaint on December 21, 2021.  *See generally* Compl.  On March 24, 2022, the parties filed a joint motion to stay proceedings and to conduct a settlement conference with a magistrate judge, which the Court granted.  *See* ECF Nos. 15, 23.  On August 5, 2022, the parties filed a joint motion for approval of settlement.  *See* Jt. Mot.

## III.    LEGAL STANDARDS

### A.      The Fair Labor Standards Act

Congress enacted the FLSA to protect workers from poor wages and long hours that can result from substantial inequalities in bargaining power between employers and employees.  *See* S. Rep. No. 884, at 3-4 (1937); H.R. Rep. No. 1452, at 9 (1937); *see also Duprey v. Scotts Co., LLC*, 30 F. Supp. 3d 404, 407 (D. Md. 2014); *Saman v. LBDP, Inc.*, No. 12-1083, 2013 WL 2949047, at *2 (D. Md. June 13, 2013).  The FLSA provides that "no employer shall employ" a covered employee in excess of 40 hours in a week unless the employee is paid at "a rate not

4

less than one and one-half times the regular rate at which he is employed" for each additional hour worked. 29 U.S.C. § 207(a)(1).  The statute's provisions are mandatory and generally are not subject to bargaining, waiver, or modification by contract or settlement.  *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706-07 (1945).

A Court-approved settlement is an exception to this rule.  *See* 29 U.S.C. § 216(b); *see also Duprey*, 30 F. Supp. 3d at 407.  And so, the Court may approve a settlement of a FLSA claim, "provided that the settlement reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'"  *Saman*, 2013 WL 2949047, at *2 (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).  While the United States Court of Appeals for the Fourth Circuit has not directly addressed the factors to be considered when approving a FLSA settlement agreement, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*."  *Id*. at *3 (citations omitted).  And so, to approve a FLSA settlement agreement, the Court must find that:  (1) there are FLSA issues actually in dispute; (2) the settlement agreement is fair and reasonable; and (3) the proposed attorneys' fees are reasonable, if included in the agreement.[2]  *See Duprey*, 30 F. Supp. 3d at 408 (citations omitted). The aforementioned factors are most likely to be satisfied where there is an "assurance of an adversarial context" and the employee is "represented by an attorney who can protect [their] rights under the statute."  *Lynn's Food Stores*, 679 F.2d at 1354.

---

[2] To determine whether a *bona fide* FLSA dispute exists, "courts examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement." *Duprey*, 30 F. Supp. 3d at 408 (citations omitted).  Courts in this district have found *bona fide* FLSA disputes to exist where a defendant denies wrongdoing, disputes employee misclassification, or asserts an affirmative defense. *See, e.g.*, *De La Cruz v. Chopra, et al.*, No. 18-0337, 2018 WL 2298717, at *2 (D. Md. May 21, 2018); *Tomeh v. Veriphyr, Inc*., No. 21-02914, 2022 WL 1422897, at *2 (D. Md. May 5, 2022).  The Court must then assess the proposed settlement agreement for fairness and reasonableness, taking into consideration:  (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion; (4) the experience of counsel who represented the plaintiffs; (5) the opinions of counsel; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery. *See De La Cruz*, 2018 WL 2298717, at *2 (citations omitted).

Lastly, when a proposed settlement agreement includes the provision of attorneys' fees, the Court must independently assess the reasonableness of the award.  *See id.*  The Court has held that, "[i]n assessing the reasonableness of the fee, courts typically refer to the principles of the traditional lodestar method as a guide."  *Hackett v. ADF Rest. Invs.*, 259 F. Supp. 3d 360, 367 (D. Md. 2016).  This method "multiplies the number of hours reasonably expended by a reasonable hourly rate."  *De La Cruz v. Chopra, et al.*, No. 18-0337, 2018 WL 2298717, at *2 (D. Md. May 21, 2018) (citations omitted); *see also* L.R. App. B(3) (D. Md. 2021).

## IV.    LEGAL ANALYSIS

The parties request that the Court approve the Settlement Agreement upon the grounds that:  (1) they have a *bona fide* FLSA dispute; (2) the Settlement Agreement reflects a reasonable compromise of disputed issues reached by parties represented by experienced counsel; and (3) the proposed attorneys' fees and costs are reasonable.  *See generally* Jt. Mem.  For the reasons stated during the hearing held in this matter on October 24, 2022, and set forth below, the Court: (1) **APPROVES** the Settlement Agreement; (2) **GRANTS** the parties' joint motion for approval of settlement; and (3) **DISMISSES** this case **WITH PREJUDICE**.

### A.  The Parties Have Shown That The Settlement Agreement Reflects A Reasonable Compromise Of A *Bona Fide* FLSA Dispute

While the United States Court of Appeals for the Fourth Circuit has not directly addressed the factors to be considered when approving a FLSA settlement agreement, this Court has routinely considered three issues:  (1) whether there are FLSA issues in dispute; (2) whether the settlement agreement is fair and reasonable; and (3) whether the proposed attorneys' fees are reasonable, if included in the agreement.  *See Duprey*, 30 F. Supp. 3d at 408 (citations omitted). In determining the first issue—whether a *bona fide* FLSA dispute exists—the Court "examine(s) the pleadings in the case, along with the representations and recitals in the proposed settlement agreement."  *Id.* (citations omitted).  This Court has found that a *bona fide* FLSA dispute exists where a defendant denies wrongdoing, disputes employee misclassification, or asserts an affirmative defense.  *See, e.g.*, *De La Cruz*, 2018 WL 2298717, at *2; *Tomeh v. Veriphyr, Inc.*, No. 21-02914, 2022 WL 1422897, at *2 (D. Md. May 5, 2022).

6

In this case, the complaint and the parties' joint motion make clear that there is a *bona fide* FLSA dispute between the parties.  First, there is a *bona fide* dispute between the parties about whether Defendants misclassified Plaintiffs as exempt under the FLSA.  In the complaint, Plaintiffs allege that Defendants misclassified them as exempt employees under the FLSA. Compl. at ¶ 48.  But, Defendants counter that they relied upon the advice of legal counsel in classifying Plaintiffs as exempt under the FLSA's administrative exemption, as a defense to this claim.  Jt. Mem. at 5.  And so, Defendants maintain that, even if Plaintiffs have been misclassified, they have a good faith defense to the recovery of liquidated damages in this case. *Id*.

The parties also dispute whether Plaintiffs were required to work more than 40 hours per week without proper compensation.  In this regard, Plaintiffs allege that they were regularly required to work more than 40 hours per week and that Defendants knew that Plaintiffs regularly worked overtime, but failed to properly compensate them for this overtime.  Compl. at ¶¶ 45-49. But, Defendants maintain that Plaintiffs exaggerate the amount of overtime hours worked, because certain GPS records show that Plaintiffs were not working during the hours in dispute. Jt. Mem. at 5.  And so, the parties have met their burden to show that there is a *bona fide* FLSA dispute in this case.  *Lynn's Food Stores*, 679 F.2d at 1354; *De La Cruz*, 2018 WL 2298717, at *2.

The Court is also satisfied that the Settlement Agreement reflects a fair and reasonable compromise of the parties' *bona fide* FLSA dispute.  To determine whether the proposed Settlement Agreement at issue here is fair and reasonable, the Court considers:  (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion; (4) the experience of counsel who represented plaintiffs; (5) the opinions of counsel; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.  *See Duprey*, 30 F. Supp. at 409. These factors support a finding that the Settlement Agreement is fair and reasonable for several reasons.

First, with regard to the stage of the proceedings and the extent of discovery, the parties requested that the Court stay this litigation so that they could engage in mediation approximately

7

three months after Plaintiffs commenced this action.  *See* ECF No. 24.  And so, no formal discovery has been conducted in this case.  Nonetheless, the parties represent that they engaged in informal discovery during the mediation process, including the exchange of certain information related to Plaintiff's alleged damages calculations.  Jt. Mem. at 6; *see also Duprey*, 30 F. Supp. 3d at 409.  Given this, the resources that otherwise would have been used to pursue this litigation were made available to the parties for settlement purposes, thereby reducing the litigation risks for both parties.

Second, Plaintiffs are represented by experienced counsel in this matter.  The law firm representing Plaintiffs—Brown, LLC—is a firm that specializes in wage-and-hour litigation. Celiesius Decl. at ¶ 2.  Mr. Celiesius, who is the lead counsel for Plaintiffs and an associate with the Brown, LLC law firm, has four years of litigation experience.  *Id.* at ¶ 9.  Mr. Celiesius has been assisted in this case by two other experienced attorneys with Brown, LLC, Jason T. Brown and Nicholas Conlon, and also by James Edward Rubin of the Rubin Employment Law Firm.  *Id.* at ¶¶ 7-8.  And so, the team of attorneys representing Plaintiffs in this matter has 63 years of combined legal experience.  *Id.* at ¶ 9.

With regard to the opinions of counsel about the Settlement Agreement, Mr. Celiesius represents to the Court that the Settlement Agreement was reached after a thorough evaluation of the potential strengths and weaknesses of the claims and defenses in this action.  *Id*. at ¶ 3-4.  In the joint motion, Plaintiffs' counsel also represent to the Court that they are "fully aware of the factual contentions of their client[s] and are in the best position to opine as to whether this settlement produces fair results after consideration of [litigation] risks."  Jt. Mem. 6-7.  And so, Plaintiffs' counsel state that it is their opinion that the proposed settlement payments reflect a "just and adequate compensation for all claims of purported overtime giving rise to the [c]omplaint."  *Id.* at 7.  While not dispositive of the issue, counsels' opinions about the Settlement Agreement also indicate that the agreement is fair and reasonable.  *See De La Cruz*, 2018 WL 2298717, at *2 (finding that, while counsel's opinion and recommendation is "not to be blindly followed," the representations made by counsel may support the reasonableness of a settlement agreement) (citation omitted).

8

The final factors that the Court considers—the probability of Plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery—also show that the Settlement Agreement is fair and reasonable.  As described above, Mr. Celiesius states in his Declaration that the Settlement Agreement was reached after substantial arms-length negotiations and that, after Plaintiffs acknowledged that Defendants had a reasonable defense to enhanced damages in this case, the parties turned to the number of overtime hours worked with an agreement to negotiate attorneys' fees separately.  Celiesius Decl. at ¶ 4.

The Court observes that the amount of the proposed settlement reflects a 100% recovery of the unpaid wages alleged in this case.  Notably, Mr. Celiesius states in his Declaration that Plaintiffs initially claimed that Defendants owed them $31,340 in unpaid wages.  *Id*.  The parties have agreed to settle this case for $32,500, excluding attorneys' fees.  *Id*.  The proposed payment to each Plaintiff also appears to be apportioned to their respective length of employment with Defendants and the number of overtime hours at issue.  *See* Settlement Agreement at ¶ 2A. Given this, the settlement amount appears to be reasonable because it would compensate Plaintiffs for all the unpaid wages sought in the complaint.[3]  Compl. at Prayer for Relief; Celiesius Decl. at ¶ 6.

Lastly, there is no suggestion of fraud or collusion, and Plaintiffs' counsel has represented Plaintiffs since the outset of this litigation.  *See generally* Jt. Mem.; *Lomascolo v. Parsons Brinckerhoff, Inc*., No. 1:08CV1310(AJT/JFA), 2009 WL 3094955, at * 12 (E.D. Va. Sept. 28, 2009) ("There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary.").

Given these factors, the Court is satisfied that the Settlement Agreement reflects a reasonable compromise, given the inherent risks and costs associated with further litigation of

---

[3] The Court also observes that the Settlement Agreement does not contain the type of general release of claims, beyond those specified in the complaint, that some courts have found to be unreasonable. Settlement Agreement at ¶ 4 (providing that Plaintiffs release Defendants "from all claims brought by Plaintiffs in their [c]omplaint"); *see also Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1352 (M.D. Fla. 2010) (concluding that "a pervasive release in an FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer" that "fails judicial scrutiny").

this matter.  *See Saman v. LBDP, Inc.*, No. 12-1083, 2013 WL 2949047, at \*5 (D. Md. June 13, 2013); *see also De La Cruz*, 2018 WL 2298717, at \*1.

### B.       The Attorneys' Fees And Costs Are Reasonable

As a final matter, the Court is also satisfied that the attorneys' fees and costs that Defendants have agreed to pay to Plaintiffs' counsel are reasonable.  Because the Settlement Agreement includes an award of attorneys' fees and costs, the Court independently considers whether these fees and costs are reasonable.  *See Lynn's Food Stores*, 679 F.2d at 1354.

"In calculating an award of attorney's fees, the Court must determine the lodestar amount, defined as a 'reasonable hourly rate multiplied by hours reasonably expended.'" *Lopez v. XTEL Const. Grp., LLC*, 838 F. Supp. 2d 346, 348 (D. Md. 2012) (citing *Grissom v. The Mills Corp.*, 549 F. 3d 313, 320–21 (4th Cir. 2008); *Plyler v. Evatt*, 902 F. 2d 273, 277 (4th Cir. 1990)).  An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 890 n.11 (1984); *see Thompson v. HUD*, No. 95–309, 2002 WL 31777631, at \*6 n.18 (D. Md. Nov. 21, 2002) (same).  And so, this Court has established rates that are presumptively reasonable for lodestar calculations in Appendix B to its Local Rules.  *See* L.R. App. B (D. Md. 2021).

The Settlement Agreement provides for the payment of attorneys' fees and costs in the amount of $14,500.  *See* Settlement Agreement at ¶ 2.B; Celiesius Decl. at ¶¶ 7-8.  This amount is comprised of $13,306.01 in attorneys' fees and $1,193.99 in litigation costs.  Jt. Mem. at 7.

Mr. Celiesius states in his Declaration that he and the other counsel for Plaintiffs have collectively expended more than 65.3 hours on this matter since August 2021.  Celiesius Decl. at ¶¶ 5, 9 (stating that the following hours were worked by attorneys for Plaintiffs:  Edmund C. Celiesius—45.3 hours; Jason T. Brown—1.4 hours; Nicholas Conlon—9.3 hours; James Edward Rubin—1.5 hours; and various Administrative Assistants—7.8 hours).  This work includes:  pre-suit settlement negotiations; conferring with Plaintiffs; settlement negotiations; and preparation of the joint motion seeking Court approval of the Settlement Agreement.  *Id.* at ¶ 5.

Mr. Celiesius also states that the proposed hourly rates for this work, as reflected in the chart below, are rates that have either been previously approved by this Court, or are otherwise consistent with the Court's Local Rules.  *See* L.R. App. B(3) (D. Md. 2021).

| Person | Yrs Admitted | Rate | Hours | Total Billed |
|---|---|---|---|---|
| Jason T. Brown | 26 | $475.00 | 1.4 | $665.00 |
| Nicholas Conlon | 9 | $300.00 | 9.3 | $2,790.00 |
| Edmund C. Celiesius | 4 | $225.00 | 45.3 | $10,192.50 |
| Administrative Assistants | | $125.00 | 7.8 | $975.00 |
| James Edward Rubin | 24 | $400.00 | 1.5 | $600.00 |
| Total | | | 92.7 | $15,222.50 |

The above hourly rates are consistent with the guidelines set forth in the Court's Local Rules.  The Local Rules provide that the following attorneys' fees are reasonable in the District of Maryland:  (1) $150-225 for lawyers admitted to the bar for less than five years; (2) $225-350 for lawyers admitted to the bar for nine to 14 years; (3) $300-475 for lawyers admitted to the bar for 20 years or more; and (4) $95-150 for paralegals and law clerks.  *See* L.R. App. B(3) (D. Md. 2021).  Here, the hourly rates for Plaintiffs' counsel and paralegals fall within this range, based upon their respective level of experience.

The Court also observes that the total amount billed by Plaintiffs' counsel for this case is $15,222.50 and that the Settlement Agreement provides for recovery of a slightly lower amount of $13,306.01 in attorneys' fees.  Celiesius Decl. at ¶ 9.  The parties' representation that the amount of attorneys' fees in this case has been negotiated separately from their agreement on the amount of Plaintiffs' recovery also demonstrates the reasonableness of the agreed-upon fees.  Jt. Mem. at 8.  And so, the Court is satisfied that these fees are reasonable.  *See De La Cruz*, 2018 WL 2298717, at *2.

Lastly, the parties have also shown that the costs to be recouped by Plaintiffs' counsel under the Settlement Agreement are reasonable.  Mr. Celiesius states that Brown, LLC will have incurred $691.99 in expenses while litigating this matter, consisting of:  (1) $410.28 to the process server to serve the complaint and summons; (2) $215.25 in fees for Lexis; (3) $33.36 in

postage to serve Defendants; and (4) an additional $33.10 in postage and e-check fees for disbursement of settlement funds.  Celiesius Decl. at ¶ 10.  In addition, the Rubin Employment Law Firm, PC incurred $502 in costs, consisting of the $402 filing fee and $100 in *pro hac vice* admissions.  *Id.* at ¶ 11.  Given this, the total costs incurred by counsel is $1,193.99, which is the same amount agreed to by the parties.  And so, the Court is satisfied that the costs to be recovered under the Settlement Agreement accurately reflect the litigation expenses incurred by Plaintiffs' counsel in this case.

And so, the Court will **APPROVE** the attorneys' fees award in the amount of $13,306.01 and the award of costs in the amount of $1,193.99.

## V.     CONCLUSION

In sum, the Court is satisfied that the Settlement Agreement constitutes a fair and reasonable compromise of the parties' *bona fide* dispute under the FLSA and that the attorneys' fees and costs provided for in the Settlement Agreement are reasonable.

And so, for the foregoing reasons, the Court:

1.  **APPROVES** the Settlement Agreement as a fair and reasonable resolution of the parties' *bona fide* FLSA dispute;
2.  **GRANTS** the parties' joint motion for approval of settlement (ECF No. 25);
3.  **DISMISSES** this matter **WITH PREJUDICE**; and
4.  **DIRECTS** the Clerk of the Court to **CLOSE** the case.

The Court shall retain jurisdiction over this matter to enforce the terms of the Settlement Agreement.

Judgment is entered accordingly.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

12